IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHICAGO AREA JOINT WELFARE COMMITTEE FOR THE POINTING, CLEANING AND CAULKING INDUSTRY, LOCAL 52, *et al.*, <br><br>           Plaintiffs, <br><br>     v. <br><br> MID AMERICA CONTRACTING, INC., MICHAEL WILSON, and DAVID ELLIOT, <br><br>           Defendants. | No.  04 C 3303 <br><br> Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Chicago Area Joint Welfare Committee for the Pointing, Cleaning and Caulking Industry, Local 52 et al. ("Funds") filed a first amended complaint against defendant Mid America Contracting, Inc. ("Mid America") alleging that: (1) defendant Mid America failed to remit payment for contributions required under the collective bargaining agreement ("CBA") and the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1132, 1145 ("ERISA"); and (2) defendants Mid America, Michael Wilson, and David Elliot failed to pay the balance owed to plaintiffs on a promissory note. Plaintiffs then filed a motion for summary judgment. Although defendants do not dispute their liability, they contest the amount owed to plaintiffs.

For the reasons set out below, the court grants plaintiffs' motion for summary judgment. The court orders defendants Mid America, Michael Wilson, and David Elliot to pay to plaintiffs the balance remaining on the promissory note, or $52,396.35. The court further orders defendant Mid America to pay to plaintiffs $267,272.90 in unpaid contributions, $53,877.94 in liquidated

damages, and $4,577.50 in audit costs, for a total of $325,728.34. Defendant Mid America must also pay to plaintiffs the interest on $267,272.90 in unpaid contributions at a rate of 11%, as well as attorneys' fees and court costs.

**FACTS**

Plaintiffs are "employee welfare benefits plans," "plans," and 'fiduciaries" under ERISA.

Defendant is an "employer" under ERISA and is obligated to make fringe benefit contributions to plaintiffs under the terms of the Agreements and Declarations of Trust pursuant to which the Funds are maintained, along with the terms of the CBA. On March 13, 2003, Judge John W. Darrah granted summary judgment for the Funds against defendant Mid America in a different case concerning the same subject matter. <u>Chicago Area Joint Welfare Comm. for the Pointing, Cleaning and Caulking Indus., Local 52 v. Mid America Contracting, Inc.</u>, 2003 WL 1220231 (N.D. Ill. 2003). Judge Darrah awarded the funds $113,116.19 for unpaid contributions for the period of November 1998 through December 2002, along with liquidated damages, interest, and audit fees.

After plaintiffs received summary judgment, they agreed to accept a promissory note from Mid America and defendants Michael Wilson and David Elliott, both of whom signed in an individual capacity. The promissory note contained a principal amount of $95,246.93, but the parties agreed to reduce the principal to $42,850.58 if Mid America made weekly installment payments on the principal and remained current in all other contribution payments. Specifically, the promissory note stated:

> Upon default in the payment of this installment plan, including current
> contribution reports and contributions, the whole of the principal sum then

2

remaining unpaid hereon shall, at the option of the holder thereof, become immediately due and payable, without demand or notice. In the case of any payment herein provided for not being made as herein provided, Mid America Contracting, Inc., Michael Wilson, individually, and David Elliott, individually, further promise to pay all costs of collection and reasonable attorneys' fees incurred by said Funds as a result of such default.

Defendants satisfied the $42,840.58 owed to plaintiffs through weekly installments paid from April 25, 2003, through July 18, 2004. Defendants, however, did not remain current with respect to contribution payments or monthly reports from April 2003 through January 2004. Plaintiffs therefore contend that because defendants defaulted on the terms of the promissory note, they must pay the entire principal, which amounts to an additional $52,396.35.

Defendants dispute this amount and claim that payments of $36,500 made to the Funds between February 2004 and September 2005 should be applied to the remaining principal on the promissory note, reducing that balance to $15,896.35. Defendants claim that they intended these payments to be applied against their obligations on the promissory note itself, rather than against current debts.

Plaintiffs also claim that defendant Mid America owes additional contributions for the periods of April 2003 through November 2004. Mid America submitted contribution reports to plaintiffs for this period stating that defendants owed $351,180.30. Since January 2004, Mid America has paid $103,919.62 toward this amount. Plaintiffs claim that Mid America now owes $247,260.66 for unpaid contributions, in addition to $1,323.64 for July 2001 through December 2003. Further, plaintiffs request liquidated damages for all contributions paid late from July 2001 through November 2004, pursuant to the terms of the Trust Agreement, as well as interest. Plaintiffs also request $4,577.50 for costs of conducting an audit into this matter. Defendant Mid

America disputes the amount of liquidated damages demanded by plaintiffs, as well as the interest rate.

Finally, plaintiffs claim in their reply brief that Mid America failed to make contribution reports from December 2004 through the present. Plaintiffs maintain that defendant Mid America owes $18,688.60 for December 2004, along with $3,737.72 in liquidated damages, and $423.36 in liquidated damages for making a late payment in April 2005.

## **DISCUSSION**

A movant is entitled to summary judgment under Rule 56 when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Unterreiner v. Volkswagen of America, Inc., 8 F.3d 1206, 1209 (7th Cir. 1993). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Becker v. Tenenbaum-Hill Assocs., Inc., 914 F.2d 107, 110 (7th Cir. 1990). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. See Fisher v. Transco Services-Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir. 1992).

Defendants do not contest liability in this matter. For this reason, the court will grant plaintiffs' motion for summary judgment as to liability and determine the amount defendants owe to plaintiffs.

Promissory Note

As discussed above, plaintiffs accepted a promissory note from defendants Mid America, Michael Wilson, and David Elliot for the amount of $95,246.93, but plaintiffs agreed to reduce that amount by $52,396.35 if defendants remained current with payments and contribution reports. Defendants then defaulted on both their payments and reports, at which point plaintiffs demanded payment of the remaining $52,396.35. Defendants do not dispute that they made late payments on the promissory note, which requires them to pay $52,396.35 remaining on the promissory note. Defendants maintain, however, that between February 6, 2004 and September 8, 2005, they paid $36,500 which they intended to be applied to the promissory note, rather than other overdue contributions. Plaintiffs maintain that they are entitled to apply defendants' payments in any manner they choose.

> The Trust Agreement in place in this matter gives the Trustees the authority:
>
> To decide all questions or controversies arising in any manner or between any parties or persons in connection with the Trust Fund or the operation thereof, whether as to any claim for any benefits made by any employees, or any person, or whether as to the construction of the language or meaning of the rules and regulations adopted by the Trustees or established by this instrument, or as to any writing, decisions, instrument, or accounts or otherwise, and the decisions of the Trustees, if made in good faith, shall be binding upon all persons dealing with the Trust Fund or claiming any benefit thereunder.

The Trust Agreement also authorizes the Trustees to "[d]o all acts, whether or not expressly authorized herein, which the Trustees deem necessary or proper for the protection of the Trust Fund held hereunder." In the instant case, the Trustees directed the Fund Office to apply payments to liquidated damages only after all other contributions had been paid.

The promissory note contains no language requiring later payments by defendants to be applied to the balance instead of other unpaid contribution amounts, and the trust agreement

5

contains no language requiring the Trustees to apply payments to earlier debts instead of those more recently accrued. Further, defendants' only support for their assertion that such a payment would be applied to the promissory note balance instead of other debts is a statement in defendant Michael Wilson's affidavit that defendants intended to pay older obligations before more recent ones. Such an assertion is simply not sufficient evidence that such an application was intended by both parties.

The court therefore turns to the language of ERISA itself, which requires trustees to act with "care, skill, prudence, and diligence" and "in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). The decision to apply payments to overdue contributions rather than liquidated damages is a reasonable decision on the part of the Trustees, and the court finds no reason to overturn it. Defendants Mid America, Michael Wilson, and David Elliot therefore owe plaintiffs the balance of the principal on the promissory note, or $52,396.35.

Unpaid Contributions and Audit Costs

The parties do not dispute that defendant Mid America owes plaintiffs money for unpaid contributions for the period of April 2003 through November 2004. According to defendant's reports, Mid America owed $351,180.30 for this period, and it made payments totaling $103,919.62. Defendant Mid America therefore owes plaintiffs $247,260.66 for this period.[1]

Mid America owes plaintiffs $1,323.64 for the period of July 2001 to December 2003. Defendants do not dispute this calculation. Further, plaintiffs claim in their reply brief that Mid

---

[1] Although the court calculates the total amount owed for this period as $247,260.68, it will use plaintiff's calculations for purposes of this decision.

America also owes $18,688.60 for contributions not paid from December 2004 through April 2005. Mid America has not contested this amount and therefore owes plaintiffs a total of $267,272.90 in unpaid contributions.

According to the CBA, plaintiffs are entitled to the costs of any audit conducted to determine contribution amounts owed by defendant. Plaintiffs claim that Mid America owes $4,577.50 in audit costs, which Mid America does not dispute. The court therefore determines that defendant Mid America must pay plaintiffs $4,577.50 for audit services.

Liquidated Damages[2]

According to the CBA, the Trustees are authorize and empowered "[t]o assess and receive from employers who are chronically delinquent, where chronic means being delinquent more than (30) days in the past 24 months, liquidated damages equal to 20% of the amount found to be delinquent." Defendants do not dispute that Mid America has been chronically delinquent in its contribution payments or that plaintiffs are entitled to 20% in liquidated damages.

As discussed above, Mid America owes plaintiffs $248,584.30 in unpaid contributions for the period of July 2001 through November 2004 ($247,260.66 + $1,323.64). Mid America also owes plaintiffs $18,688.60 in unpaid contributions for the period of December 2004 through April 2005, for a total of $267,272.90. Mid America is ordered to pay 20% of this figure in liquidated damages, or $53,454.58. Plaintiffs also claim liquidated damages of $423.36 for a

---

[2]Plaintiffs are not entitled to liquidated damages for audit costs.

payment made late for the month of April 2005, which Mid America does not contest. Mid America therefore owes plaintiffs a total of $53,877.94 in liquidated damages.[3]

Interest

Plaintiffs claim that defendant Mid America owes interest on all unpaid contributions, in addition to liquidated damages as calculated above. Mid America disputes that it owes both liquidated and damages and interest, asserting that plaintiffs are entitled only to 20% in liquidated damages.

Mid America is incorrect in its assertion. The applicable section of ERISA, 29 U.S.C. §1132(g)(2), states unequivocally:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan –
>
> (A)  the unpaid contributions,
> (B)  interest on the unpaid contributions,
> (C)  an amount equal to the greater of –
>     (I)   interest on the unpaid contributions, or
>     (ii)  liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D)  reasonable attorneys' fees and costs of the action, to be paid by the defendant, and
> (E)  such other legal or equitable relief as the court deems appropriate.
>
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the Plan, or, if none, the rate prescribed under section 6621 of Title 26.

---

[3] Plaintiffs maintain that defendant owes $74,661.87 in liquidated damages. Such a calculation appears to the court to be in error.

Further, as the Seventh Circuit has stated explicitly, "ERISA provides that in a suit for contributions the fund is entitled not only to the contributions but also to interest on them at the interest rate 'provided under the plan' plus an amount equal to the greater of that interest or 'liquidated damages provide for under the plan.'" Operating Eng'rs Local 139 Health Benefit Fund v. Gustafson Constr. Corp., 258 F.3d 645, 652 (7th Cir. 2001) (emphasis added). Plaintiffs are therefore entitled to both liquidated damages and interest on all unpaid contributions.

The trust agreements at issue do not specify an interest rate. Plaintiffs therefore seek interest at the rate authorized by § 1132(g)(2) of ERISA, which references 26 U.S.C. § 6621. The interest rate under § 6621 is calculated by adding 3% to the federal short-term rate established by the IRS. The federal short-term rate for the fourth quarter of 2006 is 8% , making the interest rate applicable in the instant matter 11%.

## **CONCLUSION**

For the reasons stated above, the court grants plaintiffs' motion for summary judgment, and enters judgment as follows: (1) against defendants Mid America, Michael Wilson, and David Elliot for the balance remaining on the promissory note in the sum of $52,396.35; (2) against defendant Mid America in the sum of $267,272.90 for unpaid contributions, $53,877.94 in liquidated damages, and $4,577.50 in audit costs, for a total of $325,728.34; (3) against Defendant Mid America for the interest on $267,272.90 in unpaid contributions at a rate of 11%; and (4) against defendant Mid America for attorneys' fees and court costs to be determined pursuant to Local Rule 54.1. Plaintiffs are directed to prepare a draft judgment order reflecting

interest to January 11, 2007, serve it on defendants and file it with the court on or before January 8, 2007, and present the judgment order to the court on January 11, 2007, at 9:30 am.


**ENTER:** **January 5, 2007**

_____
**Robert W. Gettleman
United States District Judge**